JAMES R. JOHNSON, PLAINTIFF IN ERROR, V. WILLIAM C. GHOST, ADMINISTRATOR, DEFENDANT IN ERROR.

1. **Practice:** DEFENDANT IN ERROR: REVIEW OF ERRORS COMMITTED AGAINST HIM ON THE TRIAL IN THE ADMISSION OF EVIDENCE. To entitle a defendant in error to a review in the supreme court of errors in the admission of evidence against his objection, it is not enough that he excepted to the overruling of his objection, but he should have moved for a new trial on that ground, and if still unsuccessful, have prosecuted a petition in error. The rule in this particular is the same, whether the party complaining of such errors be a plaintiff or a defendant.

2. **Advances of Money by a Parent to his Child:** HOW REGARDED. The legal inferences arising from advances of

money by a parent to his child, when wholly unexplained by evidence, is, that they were by way of gift, and not by way of loan. And the force of this inference is not weakened by the fact of the son having given to his father a statement in the form of an account of the several sums so advanced to him.

ERROR to the district court for Dodge county, where the cause had been brought upon appeal from an order of the county court allowing the plaintiff an account amounting in the aggregate to $2,134.50 against the estate of James C. Johnson, deceased. Upon a trial before POST, J., judgment was rendered in favor of plaintiff for the sum of $156.55, and against him for the costs, to reverse which he brought the cause here upon a petition in error.

*Marlow & Munger*, for plaintiff in error.

*W. C. Ghost* and *C. Hollenbeck*, for defendant in error.

LAKE, J.

The petition in error presents but a single question for our determination, viz.: Whether the finding of the court is supported by the evidence. The complaint is that the recovery was for an amount much less than the plaintiff was entitled to. This question must be answered under the well established rule of this court, not to interfere with decisions of questions of fact unless it is very clear that injustice has been done.

Referring to the judgment entry, we find that as to all of the disputed items of the plaintiff's demand, the finding was in favor of the defendant, the recovery being limited to "the sum of $156.55, due the said plaintiff under the pleadings in this action, the allowance of the same not being resisted by the defendant." By this it is shown that as to the disputed items the court regarded the copy of the alleged acknowledg-

ment of indebtedness by the deceased, admitted in evidence, as insufficient to remove the bar of the statute of limitations which had run against them, and was one of the defenses made by the answer.

The defendant, in argument, contends that this copy was erroneously admitted in evidence, and therefore ought now to be disregarded. It is true that on the trial he did object to its introduction, and possibly for a sufficient reason, but that was not enough to entitle him to a review of the action of the court in admitting the paper against his objection. He should have moved for a new trial on that ground, and, if still dissatisfied with the ruling, prosecuted a petition in error to this court. Having failed to take these steps, he is deemed to have waived the error, if one were committed, and cannot now be heard in complaint. The rule in these particulars is the same whether the party complaining of errors be a plaintiff or a defendant. We must therefore regard this copy as properly in evidence, and give to it all the weight to which it seems to be entitled, in other words, treat it as if it were the original statement made by the deceased.

This statement shown to have been made in February, 1879, was as follows:

J. C. Johnson, Debtor to J. R. Johnson:

March 5th, 1869, To cash .........................$300 00
May 3d, 1869, To cash ............................. 199 50
May 26th, 1869, To cash .......................... 200 00
June 28th, 1869, To cash .......................... 100 00
April 23, 1870, to cash............................. 25 00
June 20, 1870, to cash............................. 100 00
          1874, to cash............................. 50 00
          1875, to cash............................. 25 00
          1876, to cash............................. 30 00
Jan. 1879, to cash................................. 75 00
Feb. 17, 1879, to cash............................. 30 00

That these several sums of money were advanced by the plaintiff as indicated by this statement there is probably no doubt, for it is shown that the greater portion was in the shape of bank drafts purchased by him, and made payable to the order of his son. Indeed, the receipt of the money by the deceased is not denied by the answer, but it is alleged that all of the several items, except the last four, "were gifts from the said plaintiff to his said son, the said decedent, and so understood and acted upon by both of said parties."

Owing to the remarkable lack of evidence we have nothing before us to show the understanding of the parties respecting these advances at the time they were made. If it were expected by the father, or understood by the son that they were to be regarded as ordinary loans to be repaid at a fixed time, or on demand, certainly there is nothing in the record to indicate it, and we are therefore left to the legal inference arising from such advances by a parent to a child, which is as stated by Bailey, J., in *Hick v. Keats*, 4 B. & C., 71, that they were by way of gift and not by way of loan. And the force of this inference is not in our opinion at all weakened by the fact of the son having given the statement imputed to him of the moneys he had so received. In the first place it does not appear that the father required such statement to be made, and even if he did, it is not at all probable that it was with the view of exacting repayment, but rather to furnish a memorandum that might be of use in the subsequent division of his estate among his heirs. This, very likely, was the view taken by the court below, and we think it justifiable at least.

But even if these advances could be regarded as actual loans under the provisions of section eleven of the code of civil procedure, no action could be maintained

upon them after the expiration of four years from the time they were severally made, unless the statutory bar were removed as provided in section twenty-two, which declares that: "In any cause founded on contract, when any part of the principal or interest shall have been paid, or an acknowledgment of an existing liability, debt, or claim, or any promise to pay the same, shall have been made in writing, an action may be brought in such case within the period prescribed for the same, after such payment, acknowledgment, or promise."

With a due observance of the relation which these parties bore to each other, we do not think it would be reasonable to hold that the statement made by the son was sufficient to answer the requirement of this statute, and operate to remove the bar. It would surely be giving to it too much importance to say that it was an acknowledgment of a then "existing" legal liability for the moneys so received. By the most liberal construction it imports no such thing. It is at best but a statement that at the dates given he became debtor to his father for the several amounts mentioned, not that he was still such debtor, nor that, at the time of giving it, he was under a legal obligation to make payment thereof.

In *Wachter v. Albee*, 80 Ill., 47, it is said that: "Where a party permits a debt to run, making no effort to collect it until the statute of limitations can be pleaded in bar of the action, he is in no position to call upon the court to aid him upon slight proof; on the contrary, the evidence ought to be clear and satisfactory to overcome the bar of the statute." We see no reason for disturbing the judgment of the court below, and it is in all things affirmed.

JUDGMENT AFFIRMED.